UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| MICHAEL SLEIGHTER, ALICIA PERKINS SLEIGHTER, | 5:24-CV-05014-RAL |
| Plaintiffs, | |
| vs. | OPINION AND ORDER GRANTING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND DENYING MOTION TO DEFER |
| THE UNITED STATES OF AMERICA, | |
| Defendant. | |

Plaintiffs Michael Sleighter and Alicia Perkins Sleighter ("the Sleighters") sued the United States Government to recover for injuries they suffered in a car collision with a horse while traveling on the Pine Ridge Indian Reservation. Doc. 1. The Government moved to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim. Doc. 7. The Sleighters then filed a motion to defer ruling on the Government's motion to dismiss pursuant to Federal Rule of Civil Procedure 56(d). Doc. 18. For the following reasons, this Court grants the Government's motion to dismiss for lack of subject matter jurisdiction and denies the Sleighters' motion to defer.

## I.     Facts and Procedural Background

On October 14, 2018, the Sleighters were driving southbound on South Dakota Highway 40 which becomes BIA Route 41 ("Rte. 41") on the Pine Ridge Indian Reservation. Doc. 1 at 2. On Rte. 41, the Sleighters struck a horse that had wandered onto the road. Id. at 2–3. As a result of the collision, the Sleighters were injured. Id. at 3. The Sleighters allege that either Lovie

1

Two Bulls or Curtis Temple owned the horse. Id. Two Bulls and Temple are residents of Oglala Lakota County, South Dakota who own and pasture horses within the boundaries of the Pine Ridge Indian Reservation. Id. at 1. The Sleighters allege that the fencing was dilapidated, which allowed the horse involved in the collision to escape the enclosure. Id. at 2. The Sleighters claim that cattle guards were "filled with dirt, debris, and were otherwise unmaintained." Id. Due to the condition of the cattle guards, the horse was able to cross the cattle guard and wander onto Rte. 41. Id.

The Sleighters further allege that horses owned by Two Bulls and Temple had escaped their enclosure and been struck by vehicles in the past. Id. at 3. Yet, Two Bulls and Temple "failed to do anything to correct the fencing and cattle guard problem." Id. The Sleighters claim that the Government through its agency, the United States Department of Interior's Bureau of Indian Affairs, had actual or constructive knowledge of the condition of the fencing and cattle guards. Id. Finally, the Sleighters allege that the Government failed to "properly inspect fences, gates, or cattle guards located on roads accessing the property, failed to establish adequate or proper rules or procedures concerning inspection or maintenance of said fences, gates, or cattle guards[, and] failed to . . . properly maintain such fences, gates, or cattle guards." Id.

On October 1, 2020, the Sleighters mailed two claims under the Federal Tort Claims Act ("FTCA") to the Department of the Interior ("DOI"). Doc. 9-1 at 1. The envelope containing the FTCA claims was stamped as received on October 19, 2020, but the United States Postal Service website indicates that an individual signed for the letter on October 14, 2020. Id.; Doc. 8 at 2 n.3. In her Declaration in Support of the United States Motion to Dismiss, Doc. 9, Rebecca Pock, a paralegal with the Torts Practice Branch of the DOI's Office of the Solicitor, stated that she received and processed the claims filed by the Sleighters and attached to her declaration the documents received by the DOI on October 14, 2020, as Exhibit 1. Exhibit 1 contains two SF95s

and a letter written and signed by Robin Zephier, the Sleighters' attorney. The first SF95 form was signed in box 13a as "Robin Zephier for Claimant Alicia Sleighter + minor children N.S. + G.S," and boxes 12b and 12d were filled in, indicating a total claim of $5,000,000. Doc. 1-1 at 1. The second SF95 form was signed in box 13a as "Robin Zephier for Claimant Michael Sleighter + minor children N.S. + G.S," and boxes 12a, 12b, and 12d were filled in, indicating a total claim of $5,020,000. Id. at 6. The two claims were ultimately rejected by the DOI on April 1, 2021, for failure to provide evidence of Zephier's authority to present claims on behalf of the Sleighters. Doc. 1-2 at 1, 3.

On April 15, 2021, the DOI received a letter from Zephier, requesting the DOI "correct [its] mistake and rectify the potentially unintended blanket denial." Doc. 1-1 at 17. The DOI did not respond to the letter. Doc. 9 at 2. On July 5, 2022, the DOI received a second letter from Zephier stating he was "[a]mending the [r]econsiderations for [his] clients Michael and Alicia Sleighter." Doc. 9-4 at 1. With the second letter, Zephier included representation retention letters signed by Michael and Alicia Sleighter. Doc. 9-4 at 15–20. The DOI considered the July 5 letter as two new FTCA claims and denied them both on September 8, 2023. Doc. 9-5 at 1–4. The Sleighters filed their Complaint with this Court on March 4, 2024. Doc. 1.

## II.    Legal Standard

"If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action," Fed. R. Civ. P. 12(h)(3), and a "Rule 12(h)(3) motion to dismiss is evaluated under the same standards as a motion to dismiss pursuant to Rule 12(b)(1)." Gesinger v. Burwell, 210 F. Supp. 3d 1177, 1186 (D.S.D. 2016) (citing Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 879 n.3 (3d Cir. 1992)). A challenge to subject matter jurisdiction under Rule 12(b)(1) can be either facial or factual in nature. Osborn v. United States, 918 F.2d 724, 729 n.6

3

(8th Cir. 1990). Regardless of whether the jurisdictional attack is facial or factual, the plaintiff has the burden of proving subject matter jurisdiction. V S Ltd. P'ship v. Dep't of Hous. & Urb. Dev., 235 F.3d 1109, 1112 (8th Cir. 2000). Under a facial attack, the "court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013) (quoting Osborn, 918 F.2d at 729 n.6). As such, courts must accept a plaintiff's factual allegations as true and make all inferences in the plaintiff's favor but need not accept a plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Communs., LLC, 696 F.3d 766, 768–69 (8th Cir. 2012).

In contrast, where a factual attack is made on the court's subject matter jurisdiction, because "its very power to hear the case" is at issue, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," without transforming the motion into one for summary judgment. Osborn, 918 F.2d at 730 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)); see also Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 451 (6th Cir. 1988) ("When a challenge is to the actual subject matter jurisdiction of the court, as opposed to the sufficiency of the allegation of subject matter jurisdiction in the complaint which may be cured by an amendment to the pleading, the district court has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction."). In a factual attack on a court's jurisdiction, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6 (internal citation removed). In deciding a factual challenge to subject matter jurisdiction, the court need not view the evidence in the light most favorable to the non-moving party. See Osborn, 918 F.2d at 729 n.6, 730. Here, the United States argues that the Court

4

lacks subject matter jurisdiction because the Sleighters failed to properly present their FTCA claims. Doc. 8. This is a factual challenge to this Court's subject matter jurisdiction, so this Court may consider matters outside of the pleadings. See Eagle v. United States, 692 F. Supp. 3d 864, 872 (D.S.D. 2023).

### III.   Discussion

#### A.   FTCA Waiver of Sovereign Immunity with Proper Presentment

"The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). Congress can waive the United States' sovereign immunity, and "prescribe the terms and conditions on which the United States consents to be sued, and the manner in which the suit shall be conducted." Mader v. United States, 654 F.3d 794, 797 (8th Cir. 2011) (cleaned up and citations omitted). In a case against the United States, the waiver of sovereign immunity defines the bounds of a court's jurisdiction. See F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).

In 1946, Congress passed the FTCA, which makes the United States "liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." United States v. Orleans, 425 U.S. 807, 813 (1976). The FTCA was designed both to avoid the injustice of "having meritorious claims hitherto barred by sovereign immunity," and to avoid the additional burden that Congress had of "investigating and passing upon private bills seeking individual relief." United States v. Muniz, 374 U.S. 150, 154 (1963). As relevant to this case, the FTCA waives sovereign immunity for

> personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The FTCA waives sovereign immunity, but only if a plaintiff satisfies the procedural requirements of 28 U.S.C. § 2675(a) by presenting the claim to the proper federal agency. See Mader, 654 F.3d at 798. Specifically, § 2675(a) provides that FTCA actions "shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency." The presentment requirement of § 2675(a) "is jurisdictional and must be pleaded and proven by the FTCA claimant." Bellecourt, 994 F.2d at 430; see also Mader, 654 F.3d at 805 ("We have long held that compliance with § 2675(a)'s presentment requirement is a jurisdictional precondition to filing an FTCA suit in federal district court."). Failure to properly present a claim within "two years after such claim accrues" results in the claim being "forever barred." 28 U.S.C. § 2401(b).

Although the FTCA does not identify the exact information plaintiffs must provide to properly "present" their claim to a federal agency, the Attorney General has promulgated a regulation defining § 2675(a)'s presentment requirement. See 28 C.F.R. § 14.2(a). Section 14.2(a) reads:

> For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, [1] an executed Standard Form 95 or other written notification of an incident, [2] accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and [3] the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2(a).

### B. Whether Proper Presentment Occurred

6

The Government argues that the Sleighters failed to present evidence of Zephier's authority to act on behalf of the Sleighters and to include a sum certain. Doc. 8. Thus, the Government asserts this Court lacks jurisdiction to hear the Sleighters' claims. Id.

### 1. Evidence of Authority

The United States Court of Appeals for the Eighth Circuit, as a matter of statutory interpretation, has required that "a properly 'presented' claim under § 2675(a) . . . include evidence of a representative's authority to act on behalf of the claim's beneficiaries under state law." Mader, 654 F.3d at 803. The Eighth Circuit considered § 14.2(a) "merely a paraphrase of the inherent requirements of [§] 2675(a)." Id. at 804. The Eighth Circuit in Mader based this interpretation of § 2675(a), in part, on the purpose an administrative presentment requirement serves: to provide federal agencies "a fair opportunity to meaningfully consider, ascertain, adjust, determine, compromise, deny, or settle FTCA claims prior to suit." Id. at 801. The Eighth Circuit reasoned that "agencies simply cannot meaningfully consider FTCA claims with an eye towards settlement if representatives fail to first present evidence of their authority to act on behalf of claims' beneficiaries." Id. at 803. Because providing evidence of authority is required to properly present a claim under § 2675(a), it is a condition of the United States' waiver of sovereign immunity. Id. As such, presentment of evidence is also a condition of this Court's jurisdiction. If representatives fail to present evidence of authority in a claim, the United States' immunity from suit is undisturbed and a court is without jurisdiction.

Like an administrator of an estate or guardian of a minor, the attorney of a claimant is a representative of the claimant and must comply with the evidence of authority requirement. See Puetz v. United States, No. 23-2710, 2024 WL 1739442, at *2 (8th Cir. Apr. 23, 2024). In Puetz, the Eighth Circuit affirmed the dismissal of a medical negligence complaint against the

Department of Veterans Affairs Medical Center for lack of jurisdiction because the claimant's attorneys who filed the claim failed to present evidence of their authority to act on behalf of the claimant. The claimant's attorneys sent an email to the agency with the subject "FTCA claim for John T. Puetz" and attached the required SF95 form. The email contained the attorneys' names, but neither the email nor the attached documents indicated that they were the claimant's attorneys.

The Eighth Circuit has not given specific examples of what an attorney must do to prove their authority to file an administrative claim for a client. In Puetz, the Eighth Circuit simply held that providing no information at all of authority was insufficient. Commonly, attorneys provide an agency with a letter of representation or fee agreement. See Winn v. United States Postal Serv., No. 19-cv-00842, 2020 WL 7630685, at *5 (M.D. La. Dec. 22, 2020). However, other courts have deemed the evidence of authority requirement satisfied with less. In Kinlichee v. United States, an attorney provided sufficient evidence by listing an address on the claim forms that contained the name of the attorney's law firm and wrote "attorneys" on the SF95. 929 F. Supp. 2d 951, 960 (D. Ariz. 2013). In Sharpe v. United States, an attorney provided sufficient authorization to file a claim by sending a letter on law firm letterhead to the agency stating he was acting as a legal representative for the claimant. No. TDC-19-1607, 2020 WL 1505701, at *5 (D. Md. Mar. 30, 2020). Although the decision predates Mader, this district court in Lunsford v. United States held that a signature as "attorney for" the claimant was sufficient evidence required by the then-existing regulations promulgated pursuant to § 2675. 418 F. Supp. 1045, 1055 (D.S.D. 1976).

What emerges from these cases is that an attorney must make some minimal showing that they are in fact acting as an attorney for the claimant. This minimal showing makes sense in consideration of the "long-standing legal presumption that an attorney has authority to act on behalf of the person he or she represents." Burnett v. United States, No. DKC 2005-1279, 2005

8

WL 8174688, at *4 (D. Md. Dec. 9, 2005); see also Hill v. Mendenhall, 88 U.S. 453, 454 (1875)

("When an attorney of a court of record appears in an action for one of the parties, his authority,

in the absence of any proof to the contrary, will be presumed."); Anderson v. Flexel, Inc., 47 F.3d

243, 249 (7th Cir. 1995) ("[W]e simply recognize the existence of the longstanding legal

presumption that an attorney has the authority to act on behalf of the person he represents.");

Graves v. United States Coast Guard, 692 F.2d 71, 74 (9th Cir. 1982) (holding signature of attorney

on claim documents satisfied evidence of authority requirement "in view of the body of case law

holding that the appearance of an attorney for a party raises a presumption that the attorney has

the authority to act on that party's behalf.").

This Court looks to South Dakota law to determine whether a representative has authority

to present a claim, and like most jurisdictions, South Dakota law has long presumed that an

attorney appearing on behalf of a client is authorized to do so.  See Anderson v. Hultman, 80 N.W.

165, 166 (S.D. 1899) ("[T]he court will presume that [attorney for respondent] was duly authorized

to appear for the respondent, in the absence of proof to the contrary."); Noyes v. Belding, 59 N.W.

1069, 1075 (S.D. 1894) ("[T]he law presumes, in the absence of evidence, that an attorney at law,

who has acted as such in a matter within the scope of his professional duties, was employed and

authorized to so act.").  Moreover, "[a]n attorney and counselor at law has power to execute in the

name of his client a bond or other written instrument necessary and proper for the prosecution of

an action or proceeding about to be or already commenced." S.D.C.L. § 16-18-9.  Thus, South

Dakota law both recognizes a presumption of authority for an attorney to appear on behalf of his

client and deems an attorney expressly authorized to commence actions on behalf of the attorney's

client. By virtue of being the claimant's attorney, the representative has authority to act on behalf

of the claim's beneficiaries under South Dakota law. Thus, to properly present a claim under §

2675(a), an attorney, acting as a representative of a claim's beneficiaries, need only make some minimal showing that they are in fact acting as the beneficiaries' attorney.

Here, the Sleighters' attorney Robin Zephier has made the necessary minimal showing of authority. Zephier mailed the Sleighters' two FTCA claims to the DOI on October 1, 2020 in an Abourezk, Zephier, & LaFleur, P.C. envelope. Doc. 9-1 at 1. The mailing contained two SF95s and a letter written and signed by Zephier on stationary of Abourezk Law Firm. Id. at 3. These three documents constituted the claims submitted by the Sleighters. The first SF95 form was signed in box 13a as "Robin Zephier for Claimant Alicia Sleighter + minor children N.S. + G.S." Doc. 1-1 at 1. The second SF95 form was signed in box 13a as "Robin Zephier for Claimant Michael Sleighter + minor children N.S. + G.S." Id. at 6. The two claims were ultimately rejected by the DOI on April 1, 2021, for failure to provide evidence of Zephier's authority to present claims on behalf of the Sleighters. Doc. 1-2 at 1, 3. Reviewing the same three documents, the Government now also argues that the claims "did not include any evidence of Attorney Zephier's authority to present claims on behalf of Plaintiffs." Doc. 8 at 8.

The DOI rejection letters and the Government's motion to dismiss ignore Zephier's letter that was submitted along with the two SF95 forms. The letter is brief, simply identifying the contents of the mailing and requesting written proof of receipt of the mailing, signed "Robin Zephier." Doc. 9-1 at 3. But the letter utilized Zephier's law firm's letterhead, including in capital letters at the top "Abourezk Law Firm," the law firm's mailing address, and lists the names of each of the law firm's attorneys, including Robin L. Zephier. Id. The letter and letterhead is quite obviously sent by an attorney. See Kinlichee, 929 F. Supp. 2d at 960 (finding inclusion of name of law firm and law firm's address on SF95 form was sufficient evidence of authority); Sharpe, 2020 WL 1505701, at *5 (finding use of law firm's letter head was sufficient evidence of

10

authority). The letter communicates that the signer of the letter, Robin Zephier, is an attorney because his name is included in the letterhead. As noted above, there is a presumption that an attorney appearing on behalf of a client has the authority to do so. See Anderson, 80 N.W. at 166. Because Zephier made the minimal showing that he was in fact acting as the Sleighters' attorney, he provided evidence to demonstrate he had authority to act on behalf of the Sleighters under South Dakota law.

### 2. Sum Certain

The Government also argues that providing a sum certain is required to properly present a claim under § 2675(a) and that the Sleighters did not include a sum certain in their claims. Like evidence of authority, the requirement of a sum certain is found in the Attorney General's regulation defining § 2675(a)'s presentment requirement which states the SF95 form must be "accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." § 14.2(a). Moreover, the Eighth Circuit held that "the Attorney General's regulation is merely a paraphrase of the inherent statutory elements of claim presentation." Mader, 654 F.3d at 805 n.9. Thus, to properly present a claim under § 2675(a), the claim must include a sum certain, see A.M.L. ex rel. Losie v. United States, 61 F.4th 561, 563 (8th Cir. 2023), and the sum certain requirement is a condition precedent to this court's jurisdiction under § 2675(a), see Mader, 654 F.3d at 805 (holding "strict compliance with § 2675(a) is a jurisdictional prerequisite to suit under the FTCA").

Section 12 on an SF95 is where claimants indicate the "Amount of Claim" in dollars. Section 12 is divided into four subsections: box 12a for property damage, box 12b for personal injury, box 12c for wrongful death, and box 12d for the total amount of the claim. A claimant can satisfy the sum certain requirement by simply filling out one of the boxes. See Blair v. I.R.S., 304

F.3d 861, 866 (9th Cir. 2002) (holding that filling in box 12b with wage loss claim "would have fulfilled the jurisdictional requirement of providing a sum certain for his claim").

On her SF95 form, Alicia Sleighter filled in boxes 12b and 12d, indicating a total claim of $5,000,000. Doc. 9-1 at 4. On his SF95 form, Michael Sleighter filled in boxes 12a, 12b, and 12d, indicating a total claim of $5,020,000. Doc. 9-1 at 9. Despite the Sleighters filling out the Section 12 boxes on their SF95s, the Government asserts the Sleighters failed to provide a sum certain. The Government argues that because Zephier signed the forms on behalf of the Sleighters "+ minor children N.S. + G.S," the claim must state a sum certain for each of the three individuals. Further, because only a single figure was provided on each form, the forms failed to provide a sum certain.

If there are multiple claimants in an FTCA action, "each claimant must 'individually satisfy the jurisdictional prerequisite of filing a proper claim.'" Dalrymple v. United States, 460 F.3d 1318, 1325 (11th Cir. 2006) (quoting Haceesa v. United States, 309 F.3d 722, 734 (10th Cir. 2002)). Providing a sum certain is a jurisdictional prerequisite, so each claimant must provide a sum certain. "Multiple claimants may submit one [SF95] form containing all claims, but only under certain circumstances." Turner ex rel. Turner v. United States, 514 F.3d 1194, 1201 (11th Cir. 2008) (holding parents of claimant could not bring FTCA action in federal court after six months had passed since claim was filed because they were not listed as claimants on the SF95). At a minimum, each individual claimant should be listed on the SF95. See Campbell v. United States, 795 F. Supp. 1118, 1121 (N.D. Ga. 1990) (holding three individual plaintiffs met jurisdictional requirements despite submitting a single SF95 because all three plaintiffs were listed as claimants on the one form). When an SF95 is used, the Claimants are the individuals listed in box 2, and when a single individual is listed, any information contained in Section 12—"Amount of Claim"—pertains only to that single named Claimant.

12

Here, neither of the two forms identified the Sleighters' minor children as claimants. In box 2 of the first form, Alicia Sleighter is the only named claimant. Doc. 9-1 at 4. In box 2 of the second form, Michael Sleighter is the only named claimant. Id. at 9. Although Zephier, as representative of the Sleighters, identified "minor children N.S. + C.S." in his signature, the two minor children are not claimants because they were not named as such. See Turner, 514 F.3d at 1201. Moreover, Zephier, throughout the claim, refers only to Michael and Alicia Sleighter as "Claimants." Id. at 6-8. Because only Alicia and Michael Sleighter are listed as claimants on the SF95 forms, each form need only identify a single sum certain. Michael Sleighter's SF95 identified a sum certain of $5,020,000. Doc. 9-1 at 9. Alicia Sleighter's SF95 identified a sum certain of $5,000,000. Id. at 4. Thus, the sum certain requirement was satisfied.

Because Zephier provided evidence to demonstrate he had authority to act on behalf of the Sleighters under South Dakota law, and because the Sleighters provided a sum certain in their claims, the Sleighters properly presented their claims under § 2675(a). Moreover, the claims were submitted on October 14, 2020, exactly two years after their claims accrued. Thus, their claims were timely filed.

### C. Discretionary Function Exception to FTCA Claim

#### 1. Two Part Test for Discretionary Function

The Government next challenges this Court's jurisdiction, arguing that the alleged conduct at issue in the Sleighters' claims falls under the discretionary function exception to the FTCA's waiver of sovereign immunity. Doc. 8. The FTCA's waiver of sovereign immunity is subject to various exceptions. See 28 U.S.C § 2680. One exception is the discretionary function exception. § 2680(a). Under the discretionary function exception, the United States' waiver of sovereign immunity does not apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

Id. When the challenged conduct falls within the discretionary function exception, the United States' sovereign immunity is preserved, notwithstanding the FTCA. Because the plaintiff bears the burden of proving subject matter jurisdiction, the plaintiff also has the burden of proving the challenged conduct falls outside the discretionary function exception. Goldsby v. Sullivan, 735 F.2d 302, 303 (8th Cir. 1984).

Whether the discretionary function exception applies is determined using a two-part test. First, the challenged conduct must "involv[e] an element of judgment or choice." Metter v. United States, 785 F.3d 1227, 1230 (8th Cir. 2015) (cleaned up and citation omitted). "Government employees act with discretion unless they are following a regulation or policy that is mandatory and . . . clearly and specifically define[s] what the employees are supposed to do." Compart's Boar Store, Inc. v. United States, 829 F.3d 600, 605 (8th Cir. 2016) (cleaned up and citation omitted). "Even when some provisions of a policy are mandatory, governmental action remains discretionary if all of the challenged decisions involved 'an element of judgment or choice.'" Id. But "[w]hen a suit charges an agency with failing to act in accord with a specific mandatory directive, the discretionary function exception does not apply." Berkovitz by Berkovitz v. United States, 486 U.S. 531, 544 (1988). If there is an element of judgment or choice, this Court must then decide "whether that judgment is of the kind that the discretionary function exception was designed to shield." Metter, 785 F.3d at 1230 (cleaned up and citation omitted). The exception "protects only governmental actions and decisions based on considerations of public policy." Berkovitz, 486 U.S. at 537.

14

To decide whether the challenged conduct is discretionary, this Court must also determine "the precise action the government took or failed to take." Keller Special Tr. v. United States, CIV 16–5014, 2017 WL 4785450, at *7 (D.S.D. Oct. 20, 2017) (emphasis added) (cleaned up and citation omitted); see also Berkovitz, 486 U.S. at 540 (holding that courts are to review the "specific allegations of agency wrongdoing"). Importantly, "the question of *whether* the government was negligent is irrelevant to the applicability of the discretionary function exception." Whisnant v. United States, 400 F.3d 1177, 1185 (9th Cir. 2005). Rather, "the question of *how* the government is alleged to have been negligent is critical to the inquiry as to whether the discretionary function exception applies." Keller Special Tr., 2017 WL 4785450, at *7 (emphasis added) (cleaned up and citation omitted).

The Sleighters allege that the United States is responsible for maintaining Rte. 41, and as part of that responsibility, the United States must maintain cattle guards in the vicinity of Rte. 41. Docs. 1 at 3; 17 at 2-3. The Sleighters further allege that the United States failed to properly maintain a certain cattle guard in the vicinity of Rte. 41, which allowed a horse to traverse the cattle guard and wander onto Rte. 41. Doc. 1 at 3. As a result, the Sleighters allege they struck the horse while traveling on BIA Rte. 41 and were injured. Id. In its motion to dismiss, the Government interprets the Sleighters' complaint to claim two different actions (or failures to act): 1) negligence in maintaining BIA Rte. 41; and 2) failure to prevent horses from entering the roadway. Doc. 8 at 11. However, the Sleighters allege that maintaining cattle guards—which in turn prevents horses and other livestock from entering the roadway—is a specific obligation within the general duty to maintain roads. Thus, the specific action that the Sleighters allege the Government failed to take, and which must be outside of the discretionary function exception to survive a motion to dismiss, is maintaining cattle guards in the vicinity of Rte. 41.

## 2.  Whether the Conduct Involves an Element of Judgment or Choice

The discretionary function exception applies if maintaining cattle guards in the vicinity of

Rte. 41 involved an element of judgment or choice. See Metter, 785 F.3d at 1230. This inquiry

turns on "whether the challenged actions were . . . controlled by mandatory statutes or regulations."

United States v. Gaubert, 499 U.S. 315, 328 (1991).

The BIA is responsible for maintaining roads on Indian reservations. Mound v. United

States, No. 1:21-cv-081, 2022 WL 1059471, at *3 (D.N.D. Mar. 15, 2022). The BIA carries out

its road maintenance activities primarily through two programs: 1) the Road Maintenance Program

("RMP"); and 2) the Tribal Transportation Program ("TTP"). Doc. 11 at 2. Despite the BIA's

responsibility to maintain roads, tribes may assume the responsibilities of both the RMP and TTP

pursuant to self-determination contracts. See 25 C.F.R. § 170.802; Doc. 10 at 2. "Under the Indian

Self–Determination and Education Assistance Act ("ISDEAA"), tribes and tribal organizations

may enter into contracts with the federal government to assume the administration of programs

formerly administered by the federal government on behalf of the tribe." Hinsley v. Standing Rock

Child Protective Servs., 516 F.3d 668, 670 (8th Cir. 2008); see also 25 U.S.C. § 5321(a). At the

time of the Sleighters' accident on Rte. 41, the Oglala Sioux Tribe of the Pine Ridge Reservation

("the Tribe") was responsible for carrying out road maintenance activities on Rte. 41 under both

the RMP and TTP pursuant to two self-determination contracts. Doc. 10. The Sleighters

nevertheless may maintain an action under the FTCA against the Government because Congress

has expanded the liability of the United States under the FTCA to employees working pursuant to

self-determination contracts. See Hinsley, 516 F.3d at 672. "Tort claims against tribes, tribal

organizations, or their employees, that arise out of the tribe or tribal organization carrying out a

self-determination contract, are considered claims against the United States and are covered to the

full extent of the FTCA." Id. The Government therefore can be liable for the Tribe's negligence in maintaining Rte. 41.

The next question then is whether any statute and regulation governing the RMP and TTP (or perhaps terms of the the Tribe's self-determination contracts[1]) mandate maintaining cattle guards in the vicinity of Rte. 41 or leave doing so to involve an element of judgment or choice. "The RMP is not a statutorily defined program . . . ." Mound, 2022 WL 1059471, at *3. Rather, it is a source of funding for maintaining over 29,000 miles of BIA-owned roads listed on the National Tribal Transportation Facility Inventory ("NTTFI"). Doc. 11 at 2. Funds for the RMP come from the Department of the Interior's annual appropriations and are authorized by 25 U.S.C. § 318a. Id. The funds are "allocated by formula to BIA Regions, which then distributes the funding to the BIA agencies in that Region or provides funding to Tribes under ISDEAA." Dep't of the Interior, Budget Justifications and Performance Information Fiscal Year 2024: Bureau of Indian Affairs 78 (2024). "The amount of RMP funds tribes receive may vary from year to year and is dependent on appropriations by Congress." Doc. 11 at 3. On average, the RMP appropriation is $32 million annually. Id. "[T]here are no specific statutes, rules, regulations, policies, or mandates in the RMP that require the BIA and the Tribe to perform road maintenance in a certain way," Mound, 2022 WL 1059471, at *7, and thus no mandatory directive concerning cattle guard maintence.

The Government and the Tribe entered into a self-determination contract which authorizes the Tribe to administer the RMP program ("RMP Agreement"). Doc. 10-1. The RMP Agreement

---

[1] It is unclear whether provisions of a self-determination contract are permissible sources of discretion as it relates to the discretionary function exception. See Reyes-Colón v. United States, 974 F.3d 56, 60–61 (1st Cir. 2020) (questioning whether a contract constitutes federal policy to which a court may consult in determining applicability of discretionary function exception). This Court need not decide the issue here.

17

states that the Tribe "shall conduct the program and services under this Contract to address Tribal priorities and needs as determined by the Tribal Council." Id. at 6. Moreover, the Tribe "shall exercise full discretion over the funds made available subject only to the provisions of this contract and Federal law." Id. at 24. The work to be performed under the RMP Agreement consists of:

a) Regular Maintenance: Perform surface pavement patching, surface blading, slope maintenance. Weed control, ditch cleaning, culvert pipe clean out, removing small slides, repairing minor flood damage, sign replacement, spot graveling, mowing ditches and other incidental outline work required to keep roads in reasonably good condition and is performed regularly on main traffic roads. Perform structure/bridge maintenance as identified on the biannual bridge inspection reports on a routine basis to protect the structural integrity of the bridges.
b) Occasional Maintenance: Perform work on an intermittent basis to paved surface roadways that shall include the application of asphalt rejuvenating agents and seal coating to applicable roads on a 5-7 year cycle.
c) Paved surfaces: Perform maintenance on 240.4 miles of paved surface roads and streets.
d) Gravel and Earth surfaces: Perform maintenance on 278.6 miles of gravel, concrete, and earth roads.

Id. at 25. The RMP Agreement also lists the surface types covered, which includes "the entire roadway, including surface, shoulders, road sides, structures and traffic control devices, and the cost of protecting and handling traffic incidental to the work." Id. Finally, under the RMP Agreement, the Tribe is not "obligated to continue performance that requires an expenditure of funds in excess of the amount of funds awarded under this Contract." Id. at 6.

The RMP Agreement does not include any mandatory directives for the Tribe to maintain cattle guards. Although the RMP Agreement sets out how the funds can be used, there is no language mandating that the maintenance of roads be performed in a certain way. Funds can be used for maintenance of surface types, but the definition of surface types does not include cattle guards. Indeed, there is no mention of cattle guards in the RMP Agreement at all. Moreover, the RMP Agreement explicitly gives the Tribe discretion in deciding how to utilize RMP funds. Id. at 24. Finally, the RMP Agreement permits the Tribe to take budgetary considerations into account

when administering the program. See Walters v. United States, 474 F.3d 1137, 1139 (8th Cir. 2007) ("Where the applicable statutes, regulations, or policies allow the government to take budgetary considerations into account, the discretionary function exception applies."). Because no relevant statutes, regulations, or contractual provisions mandate the maintenance of cattle guards as part of the RMP, there was an element of judgment or choice in how the Tribe maintained cattle guards along Rte. 41 under the RMP.

The TTP provides for the "the improvement or maintenance of roads, the replacement or rehabilitation of deficient bridges, and creation or maintenance of safety and transit projects on or near tribal lands throughout Indian Country." Tribal Infrastructure: Roads, Bridges and Buildings: Hearing Before the Subcomm. for Indigenous Peoples of the U.S. of the H. Comm. on Nat. Res., 116th Cong. (2019) (statement of LeRoy Gishi, Chief, Div. of Transp. Off. of Indian Servs.). The TTP was established by 23 U.S.C. § 202 and is funded by Department of Transportation appropriations. Doc. 11 at 2. The program is jointly administered by the BIA and the Federal Highway Administration ("FHWA"). Id. Section 202 authorizes the Secretary of the Interior to issue regulations governing the TTP, and the regulations are published at 25 C.F.R. Part 170.

Maintenance of roads is an authorized use of TTP funds. See 25 U.S.C. § 202(a)(1)(A)(i). Regulations related to road maintenance are found at Subpart G of 25 C.F.R. Part 170, specifically 25 C.F.R. §§ 170.800–170.805. Funds made available for maintenance "can only be used to maintain public facilities included in the NTTFI." 25 C.F.R. § 170.800(b). Moreover, facilities must be maintained under either:

> (a) A standard accepted by BIA or FHWA (as identified in the official Tribal Transportation Program guide on either the BIA transportation Web site at http://www.bia.gov/WhoWeAre/BIA/OIS/Transportation/index.htm or the Federal Lands Highway—Tribal Transportation Program Web site at http://flh.fhwa.dot.gov/programs/ttp/guide/), or

19

(b) Another Tribal, Federal, State, or local government maintenance standard negotiated in an ISDEAA road maintenance self-determination contract or self-governance agreement.

25 C.F.R. §§ 170.803. The Tribal Transportation Program guide requires facilities be maintained

"in accordance with an applicable standard that meets or exceeds" the Manual on Uniform Traffic

Control Devices ("MUTCD") and one or more of the following:

- Appropriate National Association of County Engineers maintenance standards;
- The AASHTO Maintenance Manual for Roadways and Bridges, 4th Edition, available at https://store.transportation.org/publications?/C_MN; or
- Another Tribal, Federal, State, or local government maintenance standard negotiated in an ISDEAA road maintenance self- determination contract or self-governance agreement.

Federal Highway Administration, Tribal Transportation Program Delivery Guide, A Guide for

Tribes with an FHWA Tribal Transportation Program Agreement (2024).

The MUTCD provides a "national standard for all traffic control devices installed on any

street, highway, or bicycle trail open to public travel." 23 C.F.R. § 655.603. The MUTCD does

not address or apply to installation or maintenance of cattle guards. Although the AASHTO

Maintenance Manual for Roadways and Bridges does recommend periodic inspection of fencing

used to restrict animal access onto roadways, it makes no mention of cattle guards. See American

Association of State Highway and Transportation Officials, Maintenance Manual for Roadways

and Bridges 80 (4th ed. 2007). Finally, the Tribe's self-determination contract assuming the

responsibility of administering the TTP ("TTP Agreement") does not set forth any additional

standards for the Tribe to follow. Doc. 12-1. In fact, the TTP Agreement permits the Tribe, "at

its sole option, [to] adopt applicable FHWA or BIA policies, procedures, program guidelines and

memoranda, or develop tribal policies, procedures, program guidelines and memoranda" to

facilitate administration of the TTP. Id. at 10.

The TTP Agreement also does not contain any mandatory directives requiring the Tribe to maintain cattle guards. To the contrary, the TTP Agreement states that the "[d]etermination of the priority and amount of funds to be used for each program, function, service or activity shall be the responsibility of the Tribe, except as limited by law or otherwise proscribed in this Agreement," Id. at 9, and that the Tribe "reserves the right to reallocate funds among the eligible projects identified on an FHWA-approved Tribal Transportation Improvement Program (TTIP), so long as funds are used in accordance with Federal appropriations law." Id. at 5. Like the RMP Agreement, the TTP Agreement explicitly gives the Tribe discretion in deciding how to utilize TTP funds.

Nothing in the RMP and TTP mandates the BIA or the Tribe to maintain cattle guards in the vicinity of Rte. 41. Indeed, the Tribe has considerable discretion in deciding how to administer the RMP and TTP. Further, the Sleighters have not pointed to any other federal statute, regulation, or policy mandating the BIA or Tribe to maintain cattle guards. Thus, the first step in deciding whether the discretionary function exception applies is satisfied because there was an element of judgment or choice in how the BIA and the Tribe maintained cattle guards along Rte. 41.

### 3. Whether the Discretionary Function Exception Was Designed to Shield the Judgment

Because the Tribe's conduct involved an element of judgment or choice, the next question is whether that judgment is of the kind that the discretionary function exception was designed to shield. To do so, this Court must examine whether the Tribe's failure to maintain cattle guards was "based on considerations of social, economic, and political policy." Layton v. United States, 984 F.2d 1496, 1499 (8th Cir. 1993). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that

discretion." <u>Gaubert</u>, 499 U.S. at 324. Decisions involving how best to allocate resources are grounded in policy considerations. <u>See</u> <u>Metter</u>, 785 F.3d at 1233 (holding decision not to replace a guardrail in part due to an effort to save money was protected by the discretionary function exception); <u>Miller v. United States</u>, 163 F.3d 591, 597 (9th Cir. 1998) (holding "decision how to allocate resources in a multiple fire situation involved discretion and the consideration of competing economic and social policies"); <u>Mound</u>, 2022 WL 1059471, at *11 (holding decision on how to "allocate funding for road maintenance projects" was protected by discretionary function exceptions).

Because governmental policy as expressed in the RMP and TTP Agreements explicitly allowed the Tribe to exercise discretion when utilizing RMP and TTP funds, there is a presumption that the Tribe's failure to maintain cattle guards was grounded in policy considerations. <u>See</u> <u>Gaubert</u>, 499 U.S. at 324. The decision on whether to maintain cattle guards is fundamentally about resource allocation. Indeed, both the RMP Agreement and TTP Agreement anticipate the Tribe having to prioritize certain projects over others based on the availability of funds. <u>See</u> Doc. 10-1 at 6 ("[The Tribe] shall conduct the program and services under this Contract to address Tribal priorities and needs as determined by the Tribal Council."); Doc. 12-1 at 9 ("Determination of the priority and amount of funds to be used for each program, function, service or activity shall be the responsibility of the Tribe."). Even absent the presumption, the Tribe's conduct involved the type of policy judgment the discretionary function exception protects. <u>See</u> <u>Metter</u>, 785 F.3d at 1233.

Thus, whether to maintain cattle guards in the vicinity of Rte. 41 falls under the FTCA's discretionary-function exception, and so the Government has not waived its sovereign immunity. Accordingly, this Court lacks jurisdiction over the Sleighters' claims, and the Government's

motion to dismiss for lack of subject matter jurisdiction must be granted. Because this Court lacks jurisdiction, it need not address the Government's motion to dismiss for failure to state a claim.

### D. Motion to Defer

The Sleighters filed a motion to defer ruling on the Government's motion to dismiss pursuant to Federal Rule of Civil Procedure 56(d), arguing that they have not had a "reasonable, fair and/or meaningful opportunity for meaningful and valuable discovery from Defendant." Doc. 18. Federal Rule of Civil Procedure 56 governs motions for summary judgment. Federal Rule of Civil Procedure 56(d) specifically allows a court to "defer considering a summary judgment motion or allow time for discovery '[i]f a nonmovant shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition.'" Anzaldua v. Ne. Ambulance & Fire Prot. Dist., 793 F.3d 822, 836 (8th Cir. 2015) (quoting Fed. R. Civ. P. 56(d)).

Here, the Government did not file a motion for summary judgment. Rather, the Government filed a motion to dismiss for lack of subject matter jurisdiction under Rules 12(b)(1) and 12(h)(3) and a motion to dismiss for failure to state a claim under Rule 12(b)(6). Doc. 7. Yet, Rule 12 directs a court to apply Rule 56 standards under some circumstances. Rule 12(d) states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

This Court did review matters outside of the pleadings, but did so in deciding the Government's motion to dismiss under Rules 12(b)(1) and 12(h)(3). While "some courts have held that Rule 56 governs a 12(b)(1) motion when the court looks beyond the complaint," the Eighth Circuit has not. Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990). In Osborn, the Government moved for summary judgment, arguing the court lacked subject matter jurisdiction

over the claim at issue.    However, the district court did not adopt the Government's characterization of its motion and instead construed the motion as a motion to dismiss for lack of subject matter jurisdiction.  Osborn v. United States, 713 F. Supp. 341, 341 n.2 (D.N.D. 1989). Despite construing the motion as a motion to dismiss, the court looked beyond the pleadings to rule on the motion.  On appeal, the Eighth Circuit, recognizing the "unique nature of the jurisdictional question," held that "a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached."  Osborn, 918 F.2d at 729 (cleaned up and citation omitted).  Thus, it was proper for the district court to look beyond the pleadings in deciding a motion to dismiss for lack of subject matter jurisdiction and doing so did not convert the motion into a motion for summary judgment.  Id.

This Court nonetheless looks to Rule 56 for guidance on whether to defer its ruling pending discovery.  See Johnson v. United States, 534 F.3d 958, 965 (8th Cir. 2008) ("Courts look to decisions under Rule 56 for guidance in determining whether to allow discovery on jurisdictional facts.").  In Johnson, the district court dismissed the plaintiff's FTCA claims on a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.  Id. at 960.  On appeal the plaintiff argued "the district court erred in ruling on the government's 12(b)(1) motion without first allowing him the opportunity to conduct discovery" when there were statements that could indicate the government was refusing to turn over evidence.  Id. at 962.  The Eighth Circuit disagreed with the plaintiff's argument that discovery should have been allowed but noted that Rule 56 could provide guidance on whether to allow jurisdictional discovery before considering a 12(b)(1) motion.  Id. at 965.

To request discovery under Rule 56[(d)],[2] a party must file an affidavit describing:
(1) what facts are sought and how they are to be obtained; (2) how these facts are

---

[2] The original quote references Rule 56(f); however, 56(f) was "recodified without substantial change as Rule 56(d) effective December 1, 2010."  U.S. Commodity Futures Trading Comm'n v. Kratville, 796 F.3d 873, 888 n.11 (8th Cir. 2015) (cleaned up and citation omitted).

reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful.

Id. The plaintiff's affidavit in Johnson did not explain how the evidence sought would "raise a genuine issue of material fact relevant to whether the district court had subject matter jurisdiction under the FTCA." Id. Because the discovery sought had no relevance in determining the 12(b)(1) motion, the Eighth Circuit found no error in denying the plaintiff the opportunity to conduct discovery. Id.; see also Welter v. United States, 20-CIV-5029-JLV, 2021 WL 963567, at *4 (D.S.D. March 21, 2021) (denying discovery in an FTCA case because "the government has hidden nothing from plaintiff regarding the three 638 contracts or [the alleged tortfeasor's] employment" and "exploratory Rule 56(d) discovery is not justified").

Here, the Sleighters are seeking:

written and deposition testimony from the federal officials of the BIA and/or the tribal officials of the Oglala Sioux Tribe's Road Maintenance Program (RMP) and the fiscal operating, function, inspection and work records 2 from 1-1-18 through 1-1-19; the 638 contract between the BIA and the OST as to the mandatory implementation of the contractual language and directives on road and cattle guard inspection and repair and cleaning (and of the specific cattle guards along Route 41 near Two Bulls and Temple pastures); and the overall facts and circumstances of the Tribe's RMP and its managers and road maintenance employment duties, responsibilities, the 638 contract as to the RMP supervisors and the employment requirements of the OST/BIA RMP duties as to the inspection, upkeep, cleaning, modifying cattle guards along BIA Route 41, and particularly at the MVA site and along the adjacent pasture land of Two Bulls and Temple.

Doc. 19. Sleighters' attorney, in his affidavit, states such information would shed light on the "true nature of the mandated and prescribed work to be done by the RMP and which was actually done on those cattle guards." Doc. 22 at 1. The affidavit further states that the information will raise a genuine issue of material fact as to the "BIA Route 41 cattle guards and their records and factual

circumstances as to their inspection, modification, cleaning, digging, [and] maintenance" and show that the BIA was on notice of the condition of the cattle guards. Id. at 2.

The affidavit of the Sleighters' attorney "falls short of what Johnson requires to justify jurisdictional discovery." Eagle, 692 F. Supp. 3d at 869. First, much of what the Sleighters seek would not "raise a genuine issue of material fact relevant to whether the district court had subject matter jurisdiction under the FTCA." Johnson, 534 F.3d at 965. The Government argued that this Court lacked jurisdiction because the challenged conduct fell under the discretionary function exception.[3] Thus, this Court is concerned with "whether the challenged actions were . . . controlled by mandatory statutes or regulations." Gaubert, 499 U.S. at 328. Such information is publicly available. Moreover, the Government provided copies of the RMP Agreement and TTP Agreement, Docs. 10-1, 12-1, as well as declarations from federal employees involved with the RMP and TTP, Docs. 9–12. Second, information pertaining to the "factual circumstances as to [the] inspection, modification, cleaning, digging, [and] maintenance" of the cattle guards and whether the BIA was on notice of the cattle guards' conditions is irrelevant to whether the BIA or Tribe were *required* to maintain the cattle guards. Thus, the additional information that the Sleighters seek would not raise a genuine issue of material fact related to this Court's subject matter jurisdiction over the Sleighters' claims. The motion to defer is denied.

## IV. Conclusion

For the foregoing reasons, it is:

ORDERED that the Government's motion to dismiss, Doc. 7, is granted as to lack of subject matter jurisdiction. It is further

---

[3] The Government also argued for dismissal because the Sleighters did not properly present their claims. Because as discussed above the Sleighters did properly present their claims, this Court will not address the need for additional discovery as it pertains to proper presentment.

ORDERED that the Sleighters' motion to defer, Doc. 18, is denied.

DATED this 17ᵗʰ day of January, 2025.

BY THE COURT:

_____

ROBERTO A. LANGE
CHIEF JUDGE

27